```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 13-_61850-CV-COHN
                                     (12-60048-CR-COHN)
                              MAGISTRATE JUDGE P. A. WHITE
KENOL PAUL,                :

      Movant,              :

v.                         :         REPORT OF
                                   MAGISTRATE JUDGE
UNITED STATES OF AMERICA,  :

      Respondent.          :
_____
```

Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his sentence entered after he pled guilty to the charge of conspiracy to commit mail fraud in case no. 12-60048-CR-COHN.

The Court has reviewed the movant's motion (Cv-DE#1), the government's response (Cv-DE# 10), and all pertinent portions of the underlying criminal file.

Construing the movant's claims liberally as afforded *pro se* litigants, pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to raise the following four claims[1]:

>  1.  He was denied effective assistance of counsel, where his lawyer failed file a viable withdrawal defense to the conspiracy charge.
>
>  2.  He was denied effective assistance of counsel, where his lawyer failed to

---

[1] The fourth claim was raised in the petitioner's reply to the government's response.

        communicate that a viable withdrawal defense was available.

3. He was denied effective assistance of counsel, where his lawyer quit with no good reason and failed to submit his case file to new counsel.

4. He was denied effective assistance of counsel, where his lawyer failed advise him of the immigration consequences of his plea.

## Procedural History

The procedural history of the underlying criminal case reveals that the movant was charged by Indictment with conspiracy to commit to commit mail fraud (Count 1) and five counts of mail fraud. (Count 2-6). (CR-DE# 3). The charges arose from a mortgage fraud scheme executed by the movant and others. The factual proffer entered into by the movant describes the conduct as follows:

> Paul searched for and selected properties in Palm Beach County, Florida in the Shelby Homes at Coventry development that could be used to defraud lenders by using straw buyers to pose as purchasers for the properties. Paul recruited straw buyers who, in exchange for a fee allowed their identities and credit information to be used in false and fraudulent mortgage loan applications associated with the purchase of the residential properties. The mortgage loan applications and related documents contained, which were subsequently submitted to the lenders, contained numerous materially false statements and representations relating to, among other matters, the purported borrowers' employment, income, assets, and other information for the lenders to assess the supposed purchasers' qualifications.
>
> After recruiting the straw buyers, Paul worked with mortgage brokers on the straw buyers' behalf providing false information to the broker, and provided straw buyers' cash to close obligations. Specifically, Paul deposited money into straw buyers' bank accounts or added straw buyers' names to bank accounts controlled by Paul in order to create the appearance that: (1) the straw buyers had adequate bank deposits to qualify for the loans for which they were applying and (2) the straw buyers' cash-to-close obligations were being paid using

> the straw buyers' own funds. In connection with the sale of some of the Properties, Paul and his co-conspirators cause to be prepared false and fraudulent HUD-1 Statements which, among other things, falsely represented to the lenders that the straw buyers' had met their cash-to-close obligations using the straw buyers' own funds, when in fact, that was not the case.
>
> After closing, Paul would receive funds from the developer pursuant to a purported "Marketing Agreement." Those funds would typically be sent to Paul's Elijah Property Management accounts. The "Marketing Agreement" fee was not disclosed on the HUD-1 Settlement Statement provided to the lending bank. Paul would use the funds to: (1) pay himself and related parties such as Lunes Mesadieu, Darline Coicou, Serge Fleurimont and (2) fund borrower cash-to-close obligations on future straw buyer transactions. After properties were purchased by the straw buyers, Paul would often make mortgage payments on the properties and rent the properties to tenants through HUD's Section 8 housing assistance program.
>
> In connection with the various properties, Paul and his co-conspirators did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to directions thereon, in violation of Title 18, United States Code, Section 1341.

(CR-DE# 880. At the change of plea hearing the movant acknowledged signing the factual proffer. (CR-DE# 161).

On July 19, 2012, the movant entered into a negotiated written plea agreement with the government, agreeing to plead guilty to Count 1. (Cr-DE# 87). Pursuant to the terms of the agreement, the movant acknowledged that the sentence would be imposed by the court after considering the advisory guideline sentence. The movant further acknowledged that the court may depart from the applicable advisory guideline range and impose a sentence that is either more or less severe than the guideline sentence. The movant agreed that the court was required to consider the advisory guideline sentence, but was not bound to impose such a sentence. Rather, the court was

permitted to tailor the ultimate sentence in light of other statutory concerns, and that the court could ultimately impose a more severe or less severe sentence than the advisory guideline sentence. The movant also acknowledged and understood that he faced a statutory maximum of twenty years in prison. In exchange, the government agreed to recommend up to a three level reduction in the movant's base offense level based on his timely acceptance of responsibility.

On July 20, 2012 the court conducted a change of plea hearing. (CR-DE# 161). The movant acknowledged that he had reviewed the indictment with counsel and was satisfied with the representation and advice received. The movant reviewed discovery and discussed possible defenses. He acknowledged that there were no promises made to him that were not contained in the written plea agreement. The movant understood that his plea could result in his deportation. He had discussed the consequences of a guilty plea on his immigration status. He had no questions regarding that issue. The movant acknowledged the facts as set forth in the factual proffer and such facts were incorporated by reference. After being fully advised of his rights, the movant entered a plea of guilty which the court found to be knowing and voluntary.

On September 6, 2012 counsel filed objections to the Pre-Sentence Investigation Report (PSI). (CR-DE# 95).  Three days later, on September 9, 2012 counsel file a Motion for Substitution of Counsel and new counsel filed Notice of Appearance. According to the movant he hired the second attorney to co-counsel with the first attorney. On September 10, 2012 the court entered an order granting the motion for substitution of counsel.

On September 28, 2012, the movant appeared for sentencing. New

counsel represented the movant at the sentencing hearing. (CR-DE# 117). The movant was adjudicated guilty and the court imposed a sentence of 51 months. (CR-DE# 121). The judgment of conviction was entered on the docket by the Clerk on September 28, 2012. (CR-DE# 121). No direct appeal was filed. The judgment of conviction in the underlying criminal case became final at the latest on October 12, 2012, when time expired for filing a notice of appeal.[2] Thus, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than October 13, 2013. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). This motion to vacate was timely filed thereafter on August 20, 2013, less than one year from the time the movant's conviction became final.[3] (CV-DE#1).

## Discussion of Claims

As will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482

---

[2] Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires fourteen days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6).

[3] See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

(2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Here, the movant challenges counsel's effectiveness for multiple reasons. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

In the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993); United States v. Bartholomew, 974 F.2d 39, 42 (5th Cir. 1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. Id. at 697. However, a

movant must establish that the sentence was increased due to counsel's deficient performance. Glover v. United States, 531 U.S. 198, 203-204 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Construing the arguments raised by the movant in this §2255 motion with supporting affidavit (Cv-DE#1), the movant appears to argue that, but for counsel's misadvice regarding his exposure at sentencing, he would not have pled guilty, and instead would have proceeded to trial. However, as will be demonstrated *infra*, that claim is clearly refuted by the record.

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Withdrawal Defense
   In his first and second claims, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to

7

discuss with him or attempt to present a withdrawal defense to the conspiracy charge. The movant has not alleged what facts, if any, support the affirmative defense of withdrawal from the conspiracy.

A review of the factual proffer shows that the movant did not withdraw from the conspiracy. The movant admitted to numerous overt acts in furtherance of the conspiracy, thus, he was not entitled to the defense of withdrawal. "Because conspiracy is an inchoate offense which is complete regardless of whether the object of the conspiracy is achieved, 'withdrawal is impossible once an overt act is committed.'" United States v. Marolla, 766 F.2d 457, 461 (11th Cir. 1985)(citations omitted). As established in the factual proffer, the movant took several overt acts in furtherance of the conspiracies. Upon the commission of those overt acts the petitioner was guilty of the conspiracy as charged and could not succeed on the withdrawal defense. Since the withdrawal defense would have been rejected, counsel was not ineffective for not presenting such a defense or discussing it with the movant. Claims one and two should be denied.

Failure to Provide Case File to New Counsel

In his second claim the movant contends that counsel was ineffective for failing to provide new counsel with his case file. He claims that he was prejudiced because new counsel was thereby precluded from raising a claim of ineffective assistance of counsel. In his reply to the government's response the movant seems to argue that counsel abandoned him.

This claim should be denied because the movant has failed to establish that he was prejudiced by counsel's alleged failure to

8

forward his case file to new counsel.[4] Even if counsel did not forward the case file, the movant has only alleged that he was prejudiced because it prevented new counsel from raising a claim of ineffective assistance of counsel. Other than the claims raised in the instant motion, the movant has not alleged what claims of ineffective assistance of counsel could have been raised. The fact that he has filed the instant motion refutes the movant's claim that he is unable to pursue claims of ineffective assistance of counsel. None of the claims raised in the instant motion have merit so it cannot be said that the movant was prejudiced by counsel's alleged failure to provide the case file to new counsel.

Advice of Counsel Regarding Immigration Consequences

In a claim raised for the first time in his reply, the movant contends that counsel was ineffective for failing to advise him of the immigration consequences of his plea. He claims that but for counsel's advice he would have proceeded to trial. This claim is refuted by the record.

At the change of plea hearing the issue of the immigration consequences of his plea was raised. The movant was under oath at the plea colloquy. The movant was advised that his plea could subject him to deportation. He acknowledged this and advised the court that he had discussed the issue with counsel and had no questions. He further advised the court that no other promises had been made other than those contained in the plea agreement.

Even assuming counsel misadvised the movant as he claims, movant became aware of the possibility that an adjudication of

---

[4]In its response the government proffers that new counsel advised them that he did not have any problem obtaining any documents from the original counsel. The movant has not refuted this proffer in his reply.

guilt can affect his immigration status and/or his ability to remain in or return to the United States, and could in fact lead to his removal or deportation from the United States when the Court specifically advised movant of this fact during the plea colloquy. Movant stated he understood and nevertheless entered his guilty plea. The movant's acknowledgment that he faced possible deportation rebuts his only recent claim that he was misadvised by counsel that he would not be deported. See generally Blackledge v. Allison, 431 U.S. 63, 74 (1977) (defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity"). Accordingly, the Court cured any error due to counsel's alleged misadvice and movant's plea was voluntarily entered with full knowledge of its possible deportation consequences. See United States v. Wilson, 245 Fed. Appx. 10 (11th Cir.2007) (even if counsel was deficient in advising defendant of possible sentencing implications of guilty plea, defendant could not establish prejudice where the district court cured any error by explaining the consequences in detail before accepting the plea); Amreya v. United States, 2010 WL 4629996 (N.D.Tex. Nov.8, 2010) (movant failed to show prejudice where the trial court advised him of the possibility of deportation as the result of his plea and he testified he understood that consequence); Brown v. United States, 2010 WL 5313546 (same).

Furthermore, a defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as representation of his lawyer and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge at 73-74. See also Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. Unit B. 1981). Moreover, a criminal defendant is bound by his sworn assertions and cannot rely on

10

representations of counsel which are contrary to the advice given by the judge. See Scheele v. State, 953 So.2d 782, 785 (Fla. 4 DCA 2007) ("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4 DCA 2006) (holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie).

Moreover, as indicated above, Movant assured the Court during the change of plea proceeding that he was fully satisfied with the representation and advice given to him by counsel in the case which necessarily included counsel's representation during the pre-plea stage of the case. Again, such sworn statements made in connection with the entry of the guilty plea carry a strong presumption of truthfulness and pose a formidable barrier in subsequent collateral proceedings. See e.g., Blackledge, 431 U.S. at 74.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

### Certificate of Appealability

11

Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, it is recommended that the Court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

It is therefore recommended that this motion to vacate sentence be denied and the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 16th day of June, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Kenol Paul, Pro Se
     Fed. Reg. No. 99369-004
     D. Ray James
     Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 2000
     Folkston, GA 31537


     Gera R. Peoples, AUSA
     US Attorney's Office
     99 NE 4th Street
     Miami, FL 33132